UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------- x

ALEXANDRA BERENSON,

                        Plaintiff,

             - against -

OFFBEAT VENTURES, LLC D/B/A VINYL ME,
PLEASE and CAMERON SCHAEFER,

                       Defendants.

-------------------------------------------------------------------- x

22-CV-_____

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff Alexandra Berenson ("Berenson"), by and through her attorneys, Cerasia Law LLC, for her Complaint against defendants Offbeat Ventures, LLC d/b/a Vinyl Me, Please ("VMP") and Cameron Schaefer ("Schaefer") (collectively, the "Defendants"), alleges as follows:

**PRELIMINARY STATEMENT**

1.     Berenson, who is female and Hispanic, was employed by VMP from September 2016 until November 30, 2021, holding the position of Head of Artist and Repertoire ("A&R") at the time her employment was unlawfully terminated.

2.     During her employment, Berenson proved to be an outstanding employee. In fact, in September 2021, VMP gave her a 25% increase in her salary, effective October 1, 2021. In a September 22, 2021 letter, Schaefer, VMP's Chief Executive Officer, informed Berenson that this salary increase was "made with an understanding of and respect for the technical and creative abilities you bring to our team, as a personal regard for your character, and in recognition of the additional responsibilities you have stepped up to assume over the past year."

3.     In October 2021, Berenson asked to meet with Schaefer for the purpose of discussing her future at VMP, given that he had promised to promote her to Vice President, but

had not done so and, in fact, had pushed out that timeline over the years for no legitimate reason. Berenson and Schaefer met on October 21, 2021 to discuss her career progression.

4.    On November 5, 2021, Schaefer sent Berenson an email to address his "general observations and feedback" from that October 21 meeting, including, for example, that he was "disappoint[ed]" that the "focus [of the October 21 meeting was] on [her] personal desires and success in contrast to other messages I received from people asking how they could support the team and company." That was surprising to Berenson, given that *she* requested the October 21 meeting to discuss *her career progression*. Schaefer maintained that he was providing feedback "as an opportunity for reflection and for growth, acknowledge areas of improvement, and begin planning next steps to improve in these areas and that ultimately this feedback is a catalyst for your continuing success at VMP." Schaefer also stated that "I WANT YOU TO BE SUCCESSFUL" and even mentioned "[l]ooking ahead to 2022" with respect to Berenson's employment. Most notably, nothing in Schaefer's November 5 email suggested or even hinted to the fact that Berenson's job was in jeopardy. That is because Berenson's job was not in jeopardy until after she complained in a November 16, 2021 email to Schaefer about discrimination and retaliation, which triggered Schaefer's unlawful decision to fire her less than three days later.

5.    On November 19, 2021, Schaefer summarily fired Berenson. As a blatant act of retaliation, Schaefer boldly told Berenson during a video conference that VMP was terminating her employment because of her complaint in the November 16 email, stating: "after receiving your email it became clear to me that we are both going in different directions."

6.    Immediately after Schaefer communicated the termination decision to Berenson, he left the video meeting and VMP's People & Operations Manager, Jesse Pavlovic ("Pavlovic"), appeared on the video. At first, Pavlovic could barely speak because she was crying so hard. When

2

Pavlovic did speak, she apologized to Berenson for what had happened to her at VMP. Obviously, as a human resources professional, Pavlovic acknowledged the unlawfulness of the termination decision and Schaefer's conduct; but, Pavlovic did nothing about it.

7. In terminating Berenson's employment, VMP wholly ignored the law and its "Equal Opportunity" and "Protection Against Retaliation" policies in its Employee Handbook. In fact, despite maintaining in writing that it will investigate claims of discrimination and retaliation, VMP did not investigate the complaints of discrimination that Berenson made during her employment, including the complaint she made in writing to Schaefer on November 16, 2021. Obviously, VMP played lip service to those hollow policies and its commitment to employees that discrimination or retaliation "is not tolerated" at VMP.

8. Berenson brings this lawsuit against the Defendants to recover lost wages, compensatory damages, punitive damages and liquidated damages, as well as declaratory, injunctive and equitable relief to redress the Defendants' unlawful gender and race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"); their unlawful race discrimination and retaliation in violation of Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 *et seq.* ("Section 1981"); their unlawful gender and race discrimination and retaliation in violation of the New York State Human Rights Law, N.Y. Exec. Law § 296 ("NYSHRL"), and the New York City Human Rights Law, N.Y. City Administrative Code §§ 8-101 *et seq.* ("NYCHRL"); and their unlawful gender discrimination in connection with her compensation, in violation of the Equal Pay Act, 29 U.S.C. § 206(d) (the "EPA"), and New York Labor Law § 194 (the "NYLL").

**JURISDICTION AND VENUE**

9.      This Court has subject matter jurisdiction over Berenson's Title VII, Section 1981 and EPA claims pursuant to 28 U.S.C. §§ 1331 and 1343.

10.      This Court has supplemental jurisdiction over Berenson's NYSHRL, NYCHRL and NYLL claims pursuant to 28 U.S.C. § 1367(a).

11.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this District.

**ADMINISTRATIVE PROCEDURES**

12.      On February 25, 2022, Berenson filed a Charge of Discrimination (the "Charge") against VMP with the U.S. Equal Employment Opportunity Commission ("EEOC"), alleging violations of Title VII for gender and race discrimination and retaliation.  The EEOC issued Berenson a Notice of Right to Sue on September 21, 2022, and this lawsuit has been filed within 90 days thereafter.

13.      Pursuant to NYCHRL § 8-502, Berenson will serve a copy of this Complaint upon the New York City Commission on Human Rights and the New York City Law Department's Office of the Corporation Counsel within ten days of its filing, thereby satisfying the notice requirements under the NYCHRL.

**PARTIES**

14.      Berenson resides in Brooklyn, New York.  Over the last two and one-half years of her employment with VMP, she worked remotely for VMP from her residence in Brooklyn.

15.      VMP, which has its headquarters in Denver, Colorado, is an industry-leading music company that curates and creates vinyl packages for consumers, featuring four Record of the

Month Tracks, immersive Anthology box sets and an extensive online store and magazine.  VMP's subscription service caters to over 25,000 members in 40+ countries, and it conducts business in this District.

16.     Scheafer is one of the founders of VMP and serves as its CEO.  He was Berenson's direct supervisor.  Upon information and belief, Scheafer resides in Colorado.

## FACTS

17.     Berenson started her employment with VMP in September 2016, holding the position of Coordinator - Label Relations-A&R-Production. Because of Berenson's strong job performance, she eventually was promoted to be the Head of A&R, a title she held during the last few years of her employment.  In that role, she functioned as a talent scout and curator for talent.

18.     Berenson was an outstanding employee, but she faced a gender-based glass ceiling that prevented her progression within VMP.  Berenson worked diligently to be promoted to Vice President and had several conversations with Scheafer about her trajectory. For three years, Scheafer told Berenson that she was going to be promoted to Vice President, only to later tell her that it was pushed out to a year, and then finally that it would be pushed out indefinitely.  Scheafer did not offer Berenson any legitimate reason for refusing to promote her to Vice President.

19.     In September 2021, VMP gave Berenson a 25% increase in her salary, effective October 1, 2021.  In a September 22, 2021 letter from Scheafer, VMP's Chief Executive Officer, he told Berenson that this salary increase was "made with an understanding of and respect for the technical and creative abilities you bring to our team, as a personal regard for your character, and in recognition of the additional responsibilities you have stepped up to assume over the past year."

20.     Berenson understood that VMP paid some male employees who were at or below her level more in annual compensation than she had been paid.

21.     On November 5, 2021, VMP also issued Berenson a $100 gift card for her "collaboration and willingness to try something new with [Record of the Month]," after she spearheaded a strategic planning session with her co-workers.

22.     Berenson also experienced a race-based hostile environment at VMP.  For instance, in early-2021, Berenson complained to Schaefer that one of its outside business partners (referred to as the "OBP")[1] would continually refer to her by the name of a former female employee who also was dark-skinned, spoke over her on calls and treated her with disrespect to the point that her co-workers reached out to her to apologize for the OBP's discriminatory treatment of her.

23.     When Berenson complained to Schaefer about the OBP's conduct, which she was encouraged to do under VMP's non-discrimination policy, Schaefer asked her what should be done, instead of carrying out VMP's legal obligation to take corrective action or any action as the CEO and her boss to end the discriminatory conduct. As a result, the OBP's racially discriminatory treatment of Berenson continued up to the time of the unlawful termination of her employment.

24.     In 2021, Berenson also complained to Schaefer that VMP's Chief Strategy Officer, Richard Kylberg ("Kylberg"), engaged in racially offensive conduct toward her at a work function. Specifically, she told Schaefer that Kylberg made hand gestures and comments to allude to the fact that she would not want to live in Boston because of her appearance and color of her skin as a Hispanic.  Berenson told Schaefer that Kylberg made her extremely uncomfortable. Yet, Schaefer said that the interaction was "too opaque" and that there was nothing he or VMP could do under the circumstances.  To Berenson's knowledge, Schaefer and VMP did not taken any action in response to her complaint about Kylberg.

---

[1]     Berenson disclosed the OBP's identity to VMP, but is using "OBP" for confidentiality reasons.

25.     In October 2021, Berenson asked to meet with Schaefer for the purpose of discussing her future at VMP.  On October 21, 2021, while Berenson was in Denver, she met with Schaefer.

26.     On November 5, 2021, Schaefer sent Berenson an email to address his "general observations and feedback" from that October 21 meeting, including, for example, that he was "disappoint[ed]" that the "focus [of the October 21 meeting was] on [her] personal desires and success in contrast to other messages [he] received from people [*i.e.*, males] asking how they could support the team and company."  That was surprising to Berenson, given that *she* requested the October 21 meeting to discuss *her career progression*.  Schaefer also maintained in his email that he was providing feedback "as an opportunity for reflection and for growth, acknowledge areas of improvement, and begin planning next steps to improve in these areas and that ultimately this feedback is a catalyst for your continuing success at VMP."  Schaefer also criticized Berenson for her interactions with the OBP and Kylberg – obviously ignoring the fact that she had complained to Scheafer about their racially-discriminatory conduct, which he and VMP did nothing to address. Schaefer further stated that "I WANT YOU TO BE SUCCESSFUL" and even mentioned "[l]ooking ahead to 2022" with respect to Berenson's employment.

27.     Most notably, nothing in Schaefer's November 5 email suggested or even hinted to the fact that Berenson's job was in jeopardy, let alone that she would be fired. That is because Berenson's job was not in jeopardy until after she complained in a November 16 email to Schaefer about discrimination and retaliation, which triggered Schaefer's unlawful decision to fire her less than three days later, on November 19.

28.     Berenson was surprised to receive Schaefer's November 5 email, including the content of that email.

29.     On November 16, 2021, Berenson responded to Schaefer's November 5 email, in which she expressed surprise with his newly-minted comments, but also acknowledged his perception and made it clear that she was committed to performing her job so that VMP could prosper and grow. In responding to Schaefer's concerns about her interaction with the OBP and Kylberg, Berenson reminded him of the racial hostility that she experienced in dealing with the OBP and Kylberg, and the fact that no action was taken by VMP. In addition, Berenson mentioned the lack of females and racial diversity at VMP, the fact that she received the November 5 email after complaining about "multiple incidents of sexism" and that "I feel the need to put out there that I believe I am being discriminated against due to my gender and retaliated against for raising those concerns."

30.     On November 18, 2021, Kylberg posted on Slack the lyrics to the song "A Message to You, Rudy" by The Specials, which, upon information and belief, was designed to be a message to Berenson about "creating problems" at VMP, given that she reiterated her prior complaint about Kylberg's race-based treatment of her in her November 16 email to Schaefer. That post by Kylberg was no mere coincidence.

31.     On November 19, 2021, Schaefer summarily fired Berenson – less than three days after she complained in writing to him about discrimination and retaliation. As a blatant act of retaliation, Schaefer boldly told Berenson during a video conference that VMP was terminating her employment because of her complaint in the November 16 email, stating: "after receiving your email it became clear to me that we are both going in different directions."

32.     Immediately after Schaefer communicated the termination decision to Berenson, he left the video meeting and Pavlovic, VMP's People & Operations, appeared on the video. At first, Pavlovic could barely speak because she was crying so hard. When Pavlovic did speak, she

8

apologized to Berenson for what had happened to her at VMP. Obviously, as a human resources professional, Pavlovic acknowledged the unlawfulness of the termination decision and Schaefer's conduct; but, Pavlovic did nothing about it and simply described the terms of Berenson's departure from VMP.

33.     In terminating Berenson's employment, VMP wholly ignored the law and its "Equal Opportunity" and "Protection Against Retaliation" policies in its Employee Handbook.  In fact, despite maintaining in its Handbook that it will investigate claims of discrimination and retaliation, VMP did not investigate the complaints of discrimination and retaliation that Berenson made during her employment, including the complaint she made in writing to Schaefer on November 16.  Obviously, VMP played lip service to those hollow policies and its commitment to employees that discrimination and retaliation "is not tolerated" at VMP.

34.     The Defendants' deplorable and inexplicable conduct demonstrated a willful and reckless disregard for Berenson's rights under the applicable laws and caused her to lose wages and benefits and to suffer humiliation, embarrassment, pain and suffering, as well as damage to her career and reputation.

## FIRST CAUSE OF ACTION
### Retaliation Against VMP in Violation of Title VII

35.     Berenson incorporates herein by reference the preceding paragraphs as if fully set forth herein in their entirety.

36.     VMP retaliated against Berenson by terminating her employment because of her complaints about gender and race discrimination, in violation of Title VII.

37.     As a direct and proximate result of VMP's unlawful retaliatory conduct in violation of Title VII, Berenson has suffered and continues to suffer monetary and/or economic damages,

including, but not limited to, loss of past and future income, compensation and benefits for which she is entitled an award of monetary damages.

38.     As a direct and proximate result of VMP's unlawful retaliatory conduct in violation of Title VII, Berenson has suffered and continues to suffer severe mental anguish and emotional distress, including, but not limited to, embarrassment, humiliation, stress and anxiety and emotional pain and suffering for which she is entitled to compensatory damages.

39.     VMP's unlawful and retaliatory conduct constitutes a willful and wanton violation of Title VII, was outrageous and malicious, was intended to injure Berenson, and was done with conscious or reckless disregard of her rights under the law, entitling her to punitive damages.

**SECOND CAUSE OF ACTION**
**Gender Discrimination Against VMP in Violation of Title VII**

40.     Berenson incorporates herein by reference the preceding paragraphs as if fully set forth herein in their entirety.

41.     VMP discriminated against Berenson on the basis of her gender by denying her equal terms and conditions of her employment, including her compensation, failing to promote her and terminating her employment, in violation of Title VII.

42.     As a direct and proximate result of VMP's unlawful discriminatory conduct in violation of Title VII, Berenson has suffered, and continues to suffer, monetary and/or economic harm, for which she is entitled to an award of monetary damages.

43.     As a direct and proximate result of VMP's unlawful discriminatory conduct in violation of Title VII, Berenson has suffered, and continues to suffer, severe mental anguish and emotion distress including, but not limited to, embarrassment, humiliation, stress and anxiety and emotional pain and suffering for which she is entitled to compensatory damages.

44.     VMP's unlawful and discriminatory conduct constitutes a willful and wanton violation of Title VII, was outrageous and malicious, was intended to injure Berenson, and was done with conscious or reckless disregard of her rights under the law, entitling her to punitive damages.

**THIRD CAUSE OF ACTION**
**<u>Racially Hostile Work Environment Against VMP in Violation of Title VII</u>**

45.     Berenson incorporates herein by reference the preceding paragraphs as if fully set forth herein in their entirety.

46.     VMP denied Berenson equal terms and conditions of her employment as described above, including, but not limited to, subjecting her to and condoning a racially hostile work environment, in violation of Title VII.

47.     As a direct and proximate result of VMP's unlawful conduct in violation of Title VII, Berenson has suffered and continues to suffer monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation and benefits for which she is entitled an award of monetary damages.

48.     As a direct and proximate result of VMP's unlawful conduct in violation of Title VII, Berenson has suffered and continues to suffer severe mental anguish and emotional distress, including, but not limited to, embarrassment, humiliation, stress and anxiety and emotional pain and suffering for which she is entitled to compensatory damages.

49.     VMP's unlawful conduct constitutes a willful and wanton violation of Title VII, was outrageous and malicious, was intended to injure Berenson, and was done with conscious or reckless disregard of her rights under the law, entitling her to punitive damages.

## FOURTH CAUSE OF ACTION
### Retaliation in Violation of Section 1981

50.     Berenson incorporates herein by reference the preceding paragraphs as if fully set forth herein in their entirety.

51.     The Defendants retaliated against Berenson by terminating her employment because of her complaints about race discrimination, in violation of Section 1981

52.     As a direct and proximate result of the Defendants' unlawful retaliatory conduct in violation of Section 1981, Berenson has suffered and continues to suffer monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation and benefits for which she is entitled an award of monetary damages.

53.     As a direct and proximate result of the Defendants' unlawful retaliatory conduct in violation of Section 1981, Berenson has suffered and continues to suffer severe mental anguish and emotional distress, including, but not limited to, embarrassment, humiliation, stress and anxiety and emotional pain and suffering for which she is entitled to compensatory damages.

54.     The Defendants' unlawful and retaliatory conduct constitutes a willful and wanton violation of Section 1981, was outrageous and malicious, was intended to injure Berenson, and was done with conscious or reckless disregard of her rights under the law, entitling her to punitive damages.

## FIFTH CAUSE OF ACTION
### Racially Hostile Work Environment in Violation of Section 1981

55.     Berenson incorporates herein by reference the preceding paragraphs as if fully set forth herein in their entirety.

56.     The Defendants denied Berenson equal terms and conditions of her employment as described above, including, but not limited to, subjecting her to and condoning a racially hostile work environment.

57.     As a direct and proximate result of the Defendants' unlawful conduct in violation of Section 1981, Berenson has suffered and continues to suffer monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation and benefits for which she is entitled an award of monetary damages.

58.     As a direct and proximate result of the Defendants' unlawful conduct in violation of Section 1981, Berenson has suffered and continues to suffer severe mental anguish and emotional distress, including, but not limited to, embarrassment, humiliation, stress and anxiety and emotional pain and suffering for which she is entitled to an award of compensatory damages.

59.     The Defendants' unlawful conduct constitutes a willful and wanton violation of Section 1981, was outrageous and malicious, was intended to injure Berenson, and was done with conscious or reckless disregard of her rights under the law, entitling her to punitive damages.

## SIXTH CAUSE OF ACTION
### Retaliation in Violation of the NYSHRL

60.     Berenson incorporates herein by reference the preceding paragraphs as if fully set forth herein in their entirety.

61.     The Defendants retaliated against Berenson by terminating her employment because of her complaints about gender and race discrimination, in violation of the NYSHRL.

62.     As a direct and proximate result of the Defendants' unlawful retaliatory conduct in violation of the NYSHRL, Berenson has suffered and continues to suffer monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation and benefits for which she is entitled an award of monetary damages.

63.     As a direct and proximate result of the Defendants' unlawful retaliatory conduct in violation of the NYSHRL, Berenson has suffered and continues to suffer severe mental anguish and emotional distress, including, but not limited to, embarrassment, humiliation, stress and anxiety and emotional pain and suffering for which she is entitled to an award of monetary damages.

64.     The Defendants' unlawful conduct constitutes a willful and wanton violation of the NYSHRL, was outrageous and malicious, was intended to injure Berenson, and was done with conscious or reckless disregard of her rights under the law, entitling her to punitive damages.

### SEVENTH CAUSE OF ACTION
### Gender Discrimination in Violation of the NYSHRL

65.     Berenson incorporates herein by reference the preceding paragraphs as if fully set forth herein in their entirety.

66.     The Defendants discriminated against Berenson on the basis of her gender by denying her equal terms and conditions of her employment, including her compensation, failing to promote her and terminating her employment, in violation of the NYSHRL.

67.     As a direct and proximate result of the Defendants' unlawful discriminatory conduct in violation of the NYSHRL, Berenson has suffered, and continues to suffer, monetary and/or economic harm, for which she is entitled to an award of monetary damages.

68.     As a direct and proximate result of the Defendants' unlawful discriminatory conduct in violation of the NYSHRL, Berenson has suffered, and continues to suffer, severe mental anguish and emotion distress including, but not limited to, embarrassment, humiliation, stress and anxiety and emotional pain and suffering for which she is entitled to compensatory damages.

69.     The Defendants' unlawful and discriminatory conduct constitutes a willful and wanton violation of the NYSHRL, was outrageous and malicious, was intended to injure Berenson,

14

and was done with conscious or reckless disregard of her rights under the law, entitling her to punitive damages.

## EIGHTH CAUSE OF ACTION
### Racially Hostile Work Environment in Violation of the NYSHRL

70.     Berenson incorporates herein by reference the preceding paragraphs as if fully set forth herein in their entirety.

71.     The Defendants denied Berenson equal terms and conditions of her employment as described above, including, but not limited to, subjecting her to and condoning a racially hostile work environment, in violation of the NYSHRL.

72.     As a direct and proximate result of the Defendants' unlawful conduct in violation of the NYSHRL, Berenson has suffered and continues to suffer monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation and benefits for which she is entitled an award of monetary damages.

73.     As a direct and proximate result of the Defendants' unlawful conduct in violation of the NYSHRL, Berenson has suffered and continues to suffer severe mental anguish and emotional distress, including, but not limited to, embarrassment, humiliation, stress and anxiety and emotional pain and suffering for which she is entitled to compensatory damages.

74.     The Defendants' unlawful conduct constitutes a willful and wanton violation of the NYSHRL, was outrageous and malicious, was intended to injure Berenson, and was done with conscious or reckless disregard of her rights under the law, entitling her to punitive damages.

## NINTH CAUSE OF ACTION
### Retaliation in Violation of the NYCHRL

75.     Berenson incorporates herein by reference the preceding paragraphs as if fully set forth herein in their entirety.

76.     The Defendants retaliated against Berenson by treating her less well and terminating her employment because of her complaints about gender and race discrimination, in violation of the NYCHRL.

77.     As a direct and proximate result of the Defendants' unlawful retaliatory conduct in violation of the NYCHRL, Berenson has suffered and continues to suffer monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation and benefits for which she is entitled an award of monetary damages.

78.     As a direct and proximate result of the Defendants' unlawful retaliatory conduct in violation of the NYCHRL, Berenson has suffered and continues to suffer severe mental anguish and emotional distress, including, but not limited to, embarrassment, humiliation, stress and anxiety and emotional pain and suffering for which she is entitled to compensatory damages.

79.     The Defendants' unlawful conduct constitutes a willful and wanton violation of the NYCHRL, was outrageous and malicious, was intended to injure Berenson, and was done with conscious or reckless disregard of her rights under the law, entitling her to punitive damages.

## TENTH CAUSE OF ACTION
### Gender Discrimination in Violation of the NYCHRL

80.     Berenson incorporates herein by reference the preceding paragraphs as if fully set forth herein in their entirety.

81.     The Defendants discriminated against Berenson on the basis of her gender in violation of the NYCHRL by treating her less well because of gender, denying her equal terms and conditions of employment, including her compensation, failing to promote her and terminating her employment.

16

82.     As a direct and proximate result of the Defendants' unlawful discriminatory conduct in violation of the NYCHRL, Berenson has suffered, and continues to suffer, monetary and/or economic harm, for which she is entitled to an award of monetary damages and other relief.

83.     As a direct and proximate result of the Defendants' unlawful discriminatory conduct in violation of the NYCHRL, Berenson has suffered, and continues to suffer, severe mental anguish and emotion distress including, but not limited to, embarrassment, humiliation, stress and anxiety and emotional pain and suffering for which she is entitled to compensatory damages.

84.     The Defendants' unlawful and discriminatory conduct constitutes a willful and wanton violation of the NYCHRL, was outrageous and malicious, was intended to injure Berenson, and was done with conscious or reckless disregard of her rights under the law, entitling her to punitive damages.

## ELEVENTH CAUSE OF ACTION
### Racially Hostile Work Environment in Violation of the NYCHRL

85.     Berenson incorporates herein by reference the preceding paragraphs as if fully set forth herein in their entirety.

86.     The Defendants denied Berenson equal terms and conditions of her employment as described above, including, but not limited to, treating her less well because of her race and subjecting her to and condoning a racially hostile work environment, in violation of the NYCHRL.

87.     As a direct and proximate result of the Defendants' unlawful conduct in violation of the NYCHRL, Berenson has suffered and continues to suffer monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation and benefits for which she is entitled an award of monetary damages.

88.     As a direct and proximate result of the Defendants' unlawful conduct in violation of the NYCHRL, Berenson has suffered and continues to suffer severe mental anguish and emotional distress, including, but not limited to, embarrassment, humiliation, stress and anxiety and emotional pain and suffering for which she is entitled to compensatory damages.

89.     The Defendants' unlawful conduct constitutes a willful and wanton violation of the NYCHRL, was outrageous and malicious, was intended to injure Berenson, and was done with conscious or reckless disregard of her rights under the law, entitling her to punitive damages.

**TWELFTH CAUSE OF ACTION**
**Sex-Based Pay Discrimination in Violation of the EPA**

90.     Berenson incorporates herein by reference the preceding paragraphs as if fully set forth herein in their entirety.

91.     The Defendants discriminated against Berenson in violation of EPA by paying male employees higher wages and providing them with more benefits than she received for equal work in a position which required at least equal skill, effort and/or responsibility and which she performed under similar working conditions.

92.     As a direct and proximate result of the Defendants' unlawful conduct in violation of the EPA, Berenson has suffered and continues to suffer monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation and benefits for which she is entitled an award of monetary damages.

93.     The Defendants' unlawful conduct constitutes a willful and wanton violation of the EPA, was outrageous and malicious, was intended to injure Berenson, and was done with conscious or reckless disregard of her rights under the law, entitling her to liquidated damages.

## THIRTEENTH CAUSE OF ACTION
### Sex-Based Pay Discrimination in Violation of the NYLL

94.     Berenson incorporates herein by reference the preceding paragraphs as if fully set forth herein in their entirety.

95.     The Defendants discriminated against Berenson in violation of NYLL § 194 by paying male employees higher wages and providing them with more benefits than she received for equal work in a position which required at least equal skill, effort and/or responsibility and which she performed under similar working conditions or for substantially similar work, when viewed as a composite of skill, effort and responsibility, and performed under similar working conditions.

96.     As a direct and proximate result of the Defendants' unlawful conduct in violation of the NYLL, Berenson has suffered and continues to suffer monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation and benefits for which she is entitled an award of monetary damages.

97.     The Defendants' unlawful conduct constitutes a willful and wanton violation of the NYLL, was outrageous and malicious, was intended to injure Berenson, and was done with conscious or reckless disregard of her rights under the law, entitling her to liquidated damages.

### PRAYER FOR RELIEF

WHEREFORE, Berenson prays that this Court enter judgment in her favor and against the Defendants, jointly and severally, and grant to her the following relief:

a.     A declaratory judgment that the actions, conduct and practices of the Defendants complained of herein violate the laws of the United States and the State and City of New York;

b.     An injunction and order permanently restraining the Defendants from engaging in such unlawful conduct;

c.      An order directing the Defendants to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated and do not continue to affect Berenson's employment and personal life, including VMP's reinstatement of her employment;

d.      An award for all economic damages to be determined at trial, plus pre-judgment interest, to compensate Berenson for the Defendants' unlawful conduct, including back pay, front pay and lost benefits;

e.      An award for all compensatory damages to be determined at trial, plus pre-judgment interest, to compensate Berenson for future pecuniary losses, emotional distress, pain, suffering, inconvenience, mental anguish, stress, anxiety, humiliation, embarrassment, loss of enjoyment of life and other nonpecuniary losses as allowable;

f.      An award to Berenson for punitive damages under Title VII, Section 1981, the NYSHRL and the NYCHRL;

g.      An award to Berenson for liquidated damages under the EPA and NYLL;

h.      An award to Berenson for the costs incurred in this lawsuit, together with reasonable attorneys' fees; and

i.      Such other and further relief as this Court deems appropriate.

## JURY DEMAND

Berenson demands a trial by jury on all issues of fact, her claims and damages herein.

Dated:  Roseland, New Jersey
       October 24, 2022

CERASIA LAW LLC

By_____
    Edward Cerasia II
101 Eisenhower Parkway, Suite 300
Roseland, New Jersey 07068
646.525.4231
ed@cdemploymentlaw.com

Attorneys for Plaintiff *Alexandra Berenson*

21